Evans, J.
delivered the opinion of the Court.
On the trial of this case, the plaintiff claimed the right, Under the Act of 1841, to challenge one of the jurors. To this the defendant objected, that the Act of 1841, allowing the challenge, was unconstitutional. The objection was overruled, and the question submitted to this Court is, whether that decision was right. By the Act of 1841, (11 Stat. 154,) it was enacted that “hereafter, in all cases in which a jury shall be impanneled, before they shall be charged with the trial of any issue, each party shall have the right to challenge, without cause shown, two of the jury so impanneled.” The rest of the clause gives a similar right to the defendant in the Court of Sessions, in all cases of misdemeanor. The 6th section, 9th Art. of the Constitution of this State, which is supposed to be violated by the Act of 1841, is in these words: “The trial by jury, as heretofore used in this State, and the liberty of the press, shall be forever inviolably preserved.” In Coke on Littleton, by Thomas, (3 vol. page 405, sec. 8,) trial is defined to be, “ to find out, by due examination, the truth of the points in issue between the parties. As the questions are two-fold, so is the trial thereof; for either it is questio jure vel questio facte. In the 9th chap., p. 457, it is said “ the trial of the fact is in various sorts, but of these the trial' by 12 men is the most frequent and common.” Accord *491 ing to these definitions, it would seem that the trial by jury may be defined to be the finding out the truth of the facts iu issue, by the verdict, vere dictum, of twelve men. By the common law, whenever there was an issue joined between the parties, a venire facias was issued to the Sheriff to summon twelve free and lawful men, liberos et legales homines, of the body of his County, by whom the truth of the matter-might be better known. These jurors, according to Coke,, should be free; that is, “they should not be bound, but also> of such freedom of mind as they stand indifferent, as they stand unsworn. A juror should be legalis, and by law ought to have three properties. 1. 'He should be de viceneto; 2. He ought to be most sufficient both for understanding and; competency of estate. And third, he should be indifferent.”' With these qualifications, “he is accounted liben et legalis: homo; otherwise, he may be challenged,, and not suffered to. be sworn.” In England, the number of those who, were summoned and the property qualifications of those from whom the Sheriff was to select, have varied at different times. At one time the Sheriff summoned a separate jury for each particular case; but now, by the statute of Geo. 2, he summons a certain number (72) to attend the Court, out of which a pannel for each case is drawn. At one time, of those returned to serve, six were required to be de-viceneto, at another time a less number, and now I believe it is sufficient to make the return from the body of the County. The pecuniary qualification has also been the subject of frequent change — sometimes it has been ten pounds; at other times this sum has been reduced to twenty shillings. So also in criminal cases, where the right of peremptory challenge has always been allowed, at one time it extended to 35, but was afterwards reduced to (20) twenty. The mode of selection, the property qualifications, and the right of challenge, seem to be mere rules suggested by experience and prescribed by law, to be observed as most likely to secure the greatest amount, of intelligence, integrity and impartiality to the trial by jury, and of course have been at all times subject to those modifications and changes which grow out of the constant changes which eivil *492 society is undergoing. Thus, in looking through our statutes, I find, from 1731 to 1783, the Legislature arbitrarily prescribing jury lists from which all juries were to be selected. In 1783 (4 Stat. 549) the Legislature, in ordei that “ alien friends residing among us, should enjoy the security and protection of our laws, on principles of justice and impartiality,” enacted, that on the trial of all cases wherein the subjects of foreign nations may be parties, a venire facias de medietate linguae should issue to the Sheriff, to summon 18 subjects of the nation of such alien, if so many could be found, out of whom 6 should be drawn, who, with 6 citizens, should form a jury to sit on such trial.— This Act was repealed within a few years, either because the reasons which required it had ceased to exist, or it was found in practice inconvenient or unwise. The Circuit Court Act of 1768, (7 Stat. 203,) contains a provision for the trial of certain cases, by a special jury, to be formed by each party delivering in the names of 30 persons to be summoned, and out of those who attended, 12 are directed to be drawn for the trial pi the case; but, by an Act passed in 1792, the mode of forming special juries was entirely changed. (7 Stat. 271.) From these facts, it would seem that the mode of selecting juries, their property qualifications, and persons who were liable to serve, have at all times been considered the proper subjects of legislative enactment. They are merely the accessaries, and do not enter essentially into the idea of a jury trial. The verdict of a jury, composed of 6 aliens and 6 citizens, or of a special jury organized according to the Act of 1767 or 1791, was as much a trial by jury, as if the jury had been organized according to the ordinary forms. But it is argued that the words in this section of the constitution, i! as heretofore used,” are prohibitory of all alterations in the jury law then existing, at least, so far as the alteration made in the right of challenge by the Act of 1841. In order to present the subject fully, it is necessary to ascertain with some degree of precision, what was the law in relation to juries at the adoption of the constitution, and what alterations have been made in it since 1731. It appears, from *493 the preamble to the Act of 1731, (3 Stat. 274,) that the practice of selecting those who were to be summoned to sit on juries by ballot, had prevailed in the colony for many years, but I do not find any published statute authorizing this departure from the common law mode of selection by the Sheriff. The-section of that Act directs that the chief justice shall cause to be written on paper or parchment, the names of all persons appointed by/ the Act to serve as jurymen, and cause them to be put in a box containing- six divisions ; the names of the persons, in the list of grand jurors to be put in division No. 1, the names of the petit jurors to be put in No. 3, and the names of the special jury in No. 5. The section directs that there shall be drawn, by a child under ten years of age, from division No. 1, thirty names to serve as grand jurors, and in like manner, there shall be drawn from division No. 3, forty-eight persons to serve as petit jurors. The 6 section directs that, if more than 23 of the grand jurors attend, their names shall be put in a separate box or glass, and 23 shall be drawn out to serve as grand jurors. The 7 and 8 sections direct that, out of those who attend of the 48, twelve shall be drawn to serve as petit jurors. The 9 and 10 sections direct that, out of division No. 3, there shall be drawn 30 names to serve as common pleas jurors, and out of those summoned, who shall appear, 12 shall be drawn to serve as jurors of the Court of Common Pleas, The 22d section authorizes the chief justices, at the end of every three years, (if the General Assembly shall not appoint new jury lists,) to make and appoint new jury lists as follows : the names of all persons who shall have paid a tax of twenty shillings, current money, for the last preceding year, shall be transcribed, and out of those who had paid a tax of five pounds, a list of grand jurors should be formed and put in division No. 1 — the grand jurors in number not to exceed half the petit jurors ; the names of all which remain after the grand jurors are selected, to be put in division No. 3 ; and all who have paid the'tax aforesaid, who shall be inhabitants of St. Philips, Charleston, shall be put in division No. 5, to serve as jurymen at spe *494 cial Courts, and to supply any deficiency arising from the* non-attendance of other jurors. Whether jury lists were ever formed in pursuance of this clause, 1 have no means-of ascertaining, but 1 think it likely none ever were, as it appears from the Statutes at Large, that new jury lists were’ prescribed by law in the years 1740, 1744, 1751,1757 and 1707. The Act for establishing Circuit Courts, passed in 1768, (7 Stat. 203,) directs jurors to be drawn for each district, from the lists annexed to the Act, and that jury lists should be formed by the Judges, from which jurors-were to be drawn according to law. But the Legislature still continued to prescribe jury lists down to 1783. From-this review of the jury law, as it stood in 1790, it appears-—1st. That the jury lists were either prescribed by an Act of the General Assembly or made by- the judges according to the Act of 1731 ; 2. The grand jury list was-composed of different, persons from the list from which the petits and common pleas jurors were drawn ; 3d. That the-number drawn as grand jurors was 30, for petit jurors 48, and for common pleas jurors 30; and 4th. That the petit and common pleas, were seperate and distinet. Let us-now see what alterations have been made since that time. In 1791, (7 Stat. 271,) it was enacted that, from a list of all persons entitled by the constitution to vote, the Court should select those best qualified to serve as grand jurors-,, from amongst those who had paid a fax of fifteen shillings-for the preceding year, and should select the petit jurors from those who had paid a tax of five shillings. The* number of grand jurors not to exceed half the petit jurors-. The Act of 1798, (7 Stat. 286,) directs jury lists to- be< made out, by selecting for grand jurors those who had-paid a tax of three dollars, and the list of petit jurors to-consist of those who had paid a tax of one dollar and upwards. From these, twenty-four were to be drawn for grand jurors, and forty-eight for petit and common pleas jurors. The Act of 1799. (7 Stat. 290,) which is the law at this day, directs the names of all (persons entitled to vote tinder the constitution, to be put in division No. 1 of the jury box; and from these, 24 should be drawn as *495 grand jurors, and 48 for petit and common pleas jurors.— It appears from this, that since 1790, when the constitution was adopted, the following changes have been made — 1st. That the number of persons competent to serve, has been greatly increased, by reducing the property qualification to that prescribed for voters, to wit: a freehold of fifty ■acres of land, a town lot or the payment of three shillings tax ; 2d. That the distinction between the lists of grand and petit jurors has been abolished — the names of all are :put in the same box, and all are liable and qualified to serve on either jury, on which they may be drawn ; 3d. That the same persons compose the petit and common pleas, who now try all cases, whether in the sessions or common pleas ; 4th. That these alterations commenced the very next year after the adoption of the constitution, and’ were all consummated within the next nine years.
The constitution is the great fundamental law of the State, to which the Acts of every department of the government must conform, but in our efforts to find out the meaning of it, we must resort to the same rules as are applied in the construction of other laws. When, therefore, we find that an interpretation has been put upon this clause by those who lived at the same time, and probably by many of those who were members of the convention, and that this construction has never been called in question for a long time, more than half a century in this case ; it is a very strong argument in favor of its correctness, and may be and ought to be adopted, unless it is palpably wiong.— But it may be said that the peremptory right of challenge, given by the Act of 1841, is a more essential feature of the trial by jury, than those which have been enumerated.— To secure the benefit of this mode of trial, the law requires the jurors to possess a certain amount of .property, which, I suppose, originated in the idea that such persons were more likely to be educated and intelligent than those who possed none. But it is equally, if not more important, ■that the jurors should be of good character, and impartial •between the parties. It is to secure these qualities in the *496 jury, that the challenge is allowed. If a juror has been ■convicted of crime which implies moral turpitude, he may be challenged propter delictum ; if he be near of kia to one of the parties, he may be challenged because the Jaw presumes he will favor his kinsman rather than a ■stranger. But the causes of favor are infinite, and as one who challenges a juror propter affectione, must be prepared with proof to make good his challenge, it may often happen that a litigant has to submit to the almost certain 'chance of defeat, with his own secret personal enemy, or ■the intimate friend of his adversary, the leading man of ■that jury, whose verdict is to determine his rights. All who are conversant with the human mind, know how we ■are influenced by our passions and feelings — how much >even an upright and virtuous man is influenced by his love for one party, or his dislike of the other. Hence, it was thought by many wise and discreet persons, that the old mode of selecting a jury, which gave no remedy for this ■evil, was unwise. I have often seen in Court, efforts made by the parties to have a case come to a particular jury, •and to avoid a trial before another, in order to have the benefit of a friendly influence in one, and to avoid the influence of an enemy in the other jury. It was to correct ■this impediment to the impartiality of the jury trial, that ■the Act of 1841, I presume, was passed.
The right of challenge, as an incident to the trial by .jury, and as means of securing its impartiality, has been ■allowed from the earliest times, and so important has it been considered, that we find in many of the Acts of the Colonial Legislature on the subject of juries, an express reservation of the right. According to the laws of Great Britain, in Coke Litt, 3 vol. 468, it is said, the word challenge, is derived “from calior or chalior, which, in one signification, is to care for or foresee. And for that to challenge jurors is the means to care for or foresee that an indifferent trial be had.’* It is to except against those who are returned to be jurors, and forasmuch as men’s lives, fame, lands and goods are-to be tried by jurors, it is most necessary that they be omni exceptione majores. The *497 right' of challenge in some form has always existed both in civil and criminal cases; but until the Act of 1841, it was confined in civil cases to challenge for cause shewn,' The Act does not introduce anything new and unknown before. It merely extends a well known right to a new class of cases, in the selection of those who are to compose the jury. The trial by jury, is the determining of the truth of the issue by a tribunal called a jury. The trial does not begin until the jury are sworn and charged with the case. All that precedes, is preliminary to the trial. It relates to the manner in which the jury is to be constituted ; it is no part of the trial. So far as I can ascertain, by the law as it existed prior to 1790, the petit jury was formed of the first twelve who were drawn from a list of those who attended; and the Common Pleas jury was in like manner formed from the list of those who had been drawn and summoned as jurors of the Court of Common Pleas; but now, in practice regulated by a rule of Court, two juries are formed, by putting the name of the juror first drawn on jury, No. 1, the second on jury No. 2, and this is done alternately until both juries are completed. Is not a trial, by a jury thus organized, as much a trial by jury as it would have been if the old mode of selection had been used 1 Would not a trial by a special jury, organized under the Act of 1791, whereby each party had a right to have six of his own selection on the jury, be a trial by jury, as much as if the jury had been selected in any other way V All the rules which have been adopted as preliminary to the trial, have been framed with reference to the perfection of the trial, by securing to it the libaros et le-gales homines — the men who were omni exceptions major es — spoken of in the old writers on the common law'; of this description is the law which selects the jury from the tax-payers, on account of their supposed greater intelligence ; and the law which requires the jurors to be drawn by ballot; and the law which authorizes the parties to the suit to except to a certain number with or without cause, in order to secure, as far as practicable, a trial by an indifferent and impartial jury. With these qualities of intellL *498 gence and impartiality, the jury trial, in my judgment, is the wisest and best mode of deciding the disputed facts of a case, which the wisdom of man has ever yet devised ; hut without them, it is a mere mockery and delusion.— These incidents oí the jury trial, if I may so call them, have at all times been subject to such modifications and alterations as the ever-varying circumstances of society may require, or the wisdom derived from experience might suggest ; and these have, therefore, always been regarded as the proper subjects of legislation. It is true, that until 1841, the legislative power had never extended the peremptory challenge to civil cases, but it does not follow from that, that it might not be done. If the trial by jury, in all its details, was intended to be preserved inviolably in all time to come, how can the jury list be diminished by taking from it the names of all those who have been exempted by various Acts of the Legislature, passed almost annually, from the adoption of the constitution to the present time? By what authority is any man’s name put into the jury-box who does not pay a tax of twenty shillings ? Do not all these alterations make a very great change in the persons who compose the jury, and yet in the last fifty years, no one has supposed the Constitution has been violated by these alterations in the jury law. If the Legislature were to add to the list of disqualifications, by declaring those incapable of sitting on juries, who were convicted of trading with slaves, or receiving stolen goods, or fighting a duel, or any other crime which policy required to be punished with the utmost rigor, this would be an enlargement of the right of challenge propter delictum. This, 1 suppose, might well be done, and it seems to me, the power given by the Act of 1841, is of the same character. It is an enlargement of the right of challenge, by extending it to civil cases and misdemeanors.
There is certainly a very obvious difference between a jury after it is organized, and the persons who have been summoned to serve on the jury, until the jury are sworn and charged with the case ; they cannot try it until this is done. The persons who are summoned are the elements merely, *499 out of which the jury is to be formed, by the observance of certain forms of law. We speak familiarly of a Court of Magistrates, and Freeholders, and of Courts Martial, but the individuals who have been summoned are not a Court until they are organized according to law. To have a cor rect idea of the trial by jury, we must keep in mind the proper distinction between the jury itself and the persons who have been summoned to serve. The Constitution no doubt intended to preserve invariably the trial by jury as an institution, as a tribunal for the trial of issués of fact, but that the framers of it intended to prohibit all changes in the mode of selecting the jury I do not see any reason to believe.
I do not propose to attempt to show what is the precise meaning of the article of the Constitution under c,on: sideration. It would be improper to travel out of the case to give my construction for the governing of other cases, but I will take occasion to say in illustration of my interpretation, that all our cases- which have been decided seem to point to this, that the great object of the Constitution was to preserve the several forms of trial then in use. By the 7th article all laws, of force at the passing of this Constitution shall continue until repealed. By the 2 section 9 article, “No freeman of this State shall be taken or imprisoned or disseized of his freehold, liberty or privileges, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty or property,, but by the judgment of his peers or the law of the land;” and by the 6th section 9th article, “the trial by jury, as heretofore used in this State, shall be forever inviolably preserved.” At the time of the adoption of the Constitution there existed-various tribunals, some of them having very'extensive jurisdiction, and deciding without a jury the most important civil fights. Of this character was the Court of Equity, the Court of Ordinary, Justices of the Peace, the Courts for the trial of slaves and free negroes, and the Commissioners of roads and cuts. The existence and jurisdiction of all tlmse tribunals seem to be recognized by the words law of' the land in the 2d section 9th article, which is copied from one of the articles *500 of magna charla. See Coleman v. Maxcy and others, 1 McMul.; White v. Kendrick, 1 Brev. 476, in note.
It was to preserve, in perpetuity, this form of trial, in the ■cases wherein it had been used before' that time, that the •6th section 9th article, provided that the trial by jury, as heretofore used in this State, shall be forever inviolably preserved.
Wardlaw, J. Withers, J. Caldwell, Ch. Dargan, Ch. and Johnston, Ch. concurred.